# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MELANIE LEE ILIOFF,         )
                             )
                 Plaintiff,    )
                             )
                v.         )        1:19CV1226
                             )
ANDREW M. SAUL,            )
Commissioner of Social Security,  )
                             )
                 Defendant.    )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Melanie Lee Ilioff, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").   (Docket Entry 2.) Defendant has filed the certified administrative record (Docket Entries 8, 9 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 13, 15; see also Docket Entry 14 (Plaintiff's Memorandum); Docket Entry 16 (Defendant's Memorandum)).  For the reasons that follow, the Court should enter judgment for Defendant.

## I.  PROCEDURAL HISTORY

Plaintiff applied for SSI (Tr. 914-19) and, following denial of that application initially (Tr. 808-19, 841-44) and on reconsideration (Tr. 820-34, 846-47), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 848).

While Plaintiff's request for a hearing remained pending, Plaintiff filed an application for DIB (Tr. 927-30), alleging disability since December 18, 2013 (see Tr. 927), the day after a previous ALJ issued an unfavorable decision on Plaintiff's prior claim for DIB ("2013 ALJ decision") (Tr. 783-96). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing, which addressed Plaintiff's claims for both SSI and DIB together. (Tr. 710-63.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 617-30.)

The Appeals Council thereafter granted Plaintiff's request for review (Tr. 909, 1041-47, 1048-49) on the basis of Plaintiff's argument that the Commissioner had not properly appointed the ALJ under the Appointments Clause of the United States Constitution, see U.S. Const. Art. II, § 2, cl. 2, at the time she adjudicated Plaintiff's case (see Tr. 910-13, 1048-49). In granting review, Appeals Council noted that:

> [t]wo Administrative Appeals Judges (AAJs), whose appointments the Acting Commissioner of Social Security ratified and adopted as her own on July 16, 2018, plan to vacate the ALJ's decision. They will conduct a completely new review of your file. . . . [T]he AAJs will either: (1) issue their own new, independent decision; (2) remand your case to an ALJ who did not issue the previous decision or dismissal; or (3) dismiss your request for hearing. In taking one of these three actions, the AAJs will not presume that the prior ALJ's decision was correct and will not give it any weight.

(Tr. 911.) The Appeals Council further provided Plaintiff with the opportunities to "send [] a statement about the facts and the law in your case or additional evidence within 30 days" and to "ask for

2

an appearance before the Appeals Council to tell [it] about [he]r case." (Id.)

In response, Plaintiff requested "the opportunity to have a new hearing in front of an appropriately appointed ALJ instead of having her claim reviewed by two AAJ's," but did not request an appearance before the Appeals Council. (Tr. 1050.) Thereafter, the Appeals Council, through two AAJs, issued an independent decision finding Plaintiff not disabled under the Act. (Tr. 1-20.) In rendering that disability determination, the AAJs made the following findings:

> 1. [Plaintiff] met the special earnings requirements under Title II of the Act on December 18, 2013, the date [Plaintiff] has alleged disability began, and met them through December 31, 2013.
>
> . . .
>
> 2. [Plaintiff] did not engage in substantial gainful activity from the alleged onset date of December 18, 2013, through the hearing decision date.
>
> . . .
>
> 3. [Plaintiff] has the following severe impairment(s): Lumbar Degenerative Disk Disease, Osteoarthritis, Bursitis of the Bilateral Hips, Fibromyalgia, [Posttraumatic Stress Disorder ('PTSD')], Anxiety, Depression, and [Attention Deficit Hyperactivity Disorder ('ADHD')].
>
> . . .
>
> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments (Listings) in 20 CFR Part 404, Subpart P, Appendix 1.
>
> . . .

3

5. . . . [Plaintiff] has the residual functional capacity to perform less than the full range of unskilled light work . . . . [She] can stand and walk for 6 hours in an 8-hour workday, she can sit for 6 hours in an 8-hour workday, and she can lift and carry, and push and pull 20 pounds occasionally and 10 pounds frequently. [She] can occasionally climb ramps and stairs, balance, bend, stoop, kneel, crouch or crawl. [She] can never climb ladders, ropes or scaffolds, and she must avoid concentrated exposure to dangerous moving machinery and unprotected heights. Mentally, [Plaintiff] is limited to simple, routine, repetitive tasks, with simple, short instructions, requiring only simple job-related decisions, and few workplace changes, with only occasional contact with co-workers, supervisors, and the public.

. . .

6. [Plaintiff] is unable to perform any past relevant work.

. . .

10. Considering [Plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [she] can perform.

. . .

11. [Plaintiff] has not been under a disability, as defined in the . . . Act, from December 18, 2013, the date [Plaintiff] alleged that disability began, through December 13, 2017.

(Tr. 7-19 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope

4

of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

## A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as

5

adopted by the Commissioner].” <u>Mastro</u>, 270 F.3d at 176 (internal brackets and quotation marks omitted). “Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ).” <u>Id.</u> at 179 (internal quotation marks omitted). “The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ’s finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law.” <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that “[a] claimant for disability benefits bears the burden of proving a disability,” <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, “disability” means the “‘inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,’” <u>id.</u> (quoting 42 U.S.C. § 423(d)(1)(A)).[1] “To regularize the adjudicative process, the Social Security Administration [(‘SSA’)] has . . . detailed regulations incorporating longstanding medical-

---

[1] The Act “comprises two disability benefits programs. [DIB] provides benefits to disabled persons who have contributed to the program while employed. [SSI] provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical.” <u>Craig</u>, 76 F.3d at 589 n.1 (internal citations omitted).

vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id.

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro,

---

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[4]

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[4] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in
(continued...)

8

## B. Assignments of Error

Plaintiff asserts that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he failure to properly account for [Plaintiff]'s moderate limitations in concentration, persistence, and pace [('CPP')] in the RFC is harmful error" (Docket Entry 14 at 7 (bold font and single-spacing omitted));

2) "[t]he AAJ's [sic] failure to identify and resolve the apparent conflict between the VE's testimony and the [<u>Dictionary of Occupational Titles</u> ('<u>DOT</u>')] is harmful error that prevents their decision from being supported by substantial evidence" (<u>id.</u> at 12 (bold font and single-spacing omitted)); and

3) "[t]he AAJs [sic] failure to address and reconcile [the 2013 ALJ decision]'s RFC findings, which they assigned significant weight, with their own conflicting RFC conclusions is error that prevent [sic] substantial evidence from supporting the [AAJs'] decision" (<u>id.</u> at 18 (bold font and single-spacing omitted)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision.  (Docket Entry 16 at 4-19.)

---

[4] (...continued)
the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.  Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis.  <u>See</u>, <u>e.g.</u>, <u>Hunter</u>, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

## 1. CPP

In Plaintiff's first assignment of error, she asserts that "[t]he [AAJs'] failure to properly account for [Plaintiff]'s moderate limitations in [CPP] in the RFC is harmful error." (Docket Entry 14 at 7 (bold font and single-spacing omitted).)  In particular, Plaintiff maintains that, despite finding that Plaintiff's mental impairments caused moderate limitation in CPP (id. (citing Tr. 11)), the AAJs did not include any restrictions that "specifically account for [Plaintiff's] moderate limitations in [CPP]" (id. at 7 (citing Tr. 11)).  Plaintiff points out that the United States Court of Appeals for the Fourth Circuit has held that "an ALJ does not account 'for a claimant's limitations in [CPP] by restricting the hypothetical question to simple, routine tasks or unskilled work,'" (id. (quoting Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015))), that "'the ability to perform simple tasks differs from the ability to stay on task'" (id. at 10 (quoting Mascio, 780 F.3d at 638)), and that "'only the latter limitation [dealing with the ability to stay on task] would account for a claimant's limitation in [CPP]'" (id. (quoting Mascio, 780 F.3d at 638)).  According to Plaintiff, "[s]ince Mascio, district courts within the Fourth Circuit . . . have determined that more extensive RFC limitations than those assigned in [Plaintiff]'s claim did not adequately account for an ALJ's finding of a moderate limitation in [CPP]."  (Id. at 8 (citing Patton v. Colvin, No.

1:15CV616, 2016 WL 3417361, at *3-5 (M.D.N.C. June 16, 2016) (unpublished) (Webster, M.J.), recommendation adopted, slip op. (M.D.N.C. Jul. 13, 2016) (Biggs, J.), Burrow v. Colvin, No. 1:15CV163, 2016 WL 1258840, at *4 (M.D.N.C. Mar. 28, 2016) (unpublished) (Webster, M.J.), recommendation adopted, slip op. (M.D.N.C. Aug. 9, 2016) (Tilley, S.J.), Biddell v. Colvin, No. 1:15CV80, 2016 WL 815300, at *5-6 (W.D.N.C. Feb 29, 2016) (unpublished), and Hagedorn v. Colvin, No. 2:12CV85, 2015 WL 4410288, at *3-4 (W.D.N.C. July 20, 2015) (unpublished)).)

Plaintiff further notes that "evidence in the record [exists] that would suggest that she would have difficulty with maintaining a pace at work as well as difficulty with maintaining concentration and persistence to stay on task[ that t]he AAJs failed to reconcile . . . with the RFC." (Id. at 10 (citing Tr. 235, 244, 276, 283, 293, 297, 373, 376, 441, 463, 640, 644-45, 647-48, 650-51, 731-38, 743-45, 950-57, 972, 1028, 1054, 1059, 1061, 1074, 1097, 1116, 1120, 1125, 1129, 1209, 1237, 1242, 1254, 1517, 1559, 1655, 1733, 1750, 1781, 1793, 1805, 1853-57, 1860, 1888, 2128, 2143).)[5] Plaintiff observes that the "nonexamining [s]tate [a]gency medical consultants[] concluded that [Plaintiff]'s chronic pain and

---

[5] In support of her argument that the record supports deficits in maintaining CPP, Plaintiff misrelies on evidence that her counsel sent to the Appeals Council. (See Docket Entry 14 at 10 (citing Tr. 235, 244, 276, 283, 293, 297, 373, 376, 441, 463, 640, 644-45, 647-48, 650-51).) The Appeals Council "f[ou]nd this evidence d[id] not show a reasonable probability that it would change the outcome of the decision" and "did not exhibit th[e] evidence." (Tr. 2 (emphasis added).) Accordingly, that evidence does not constitute a part of the administrative record properly before this Court.

11

depression would interfere with task persistence at times" (id. at 11 (citing Tr. 815-16, 830-31)), as well as that "[t]he AAJs assigned these opinions 'great weight'" (id. at 11-12 (quoting Tr. 16)), but contends that the AAJs "failed to reconcile this portion of the[ consultants'] opinions with the RFC" (id. at 12).  Those contentions fail to warrant relief.

The Fourth Circuit has indeed held that "the ability to perform simple tasks differs from the ability to stay on task," and that "[o]nly the latter limitation would account for a claimant's limitation in [CPP]," Mascio, 780 F.3d at 638.  However, as the Fourth Circuit recently affirmed, in Mascio, the court held "that an ALJ cannot summarily "account for a claimant's limitations in [CPP] by restricting the hypothetical question to simple, routine tasks or unskilled work, . . . [b]ut we did not impose a categorical rule that requires an ALJ to always include moderate limitations in [CPP] as a specific limitation in the RFC." Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020).  As a neighboring district court has explained:

> Mascio does not broadly dictate that a claimant's moderate impairment in [CPP] always translates into a limitation in the RFC.  Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision . . . .  An ALJ may account for a claimant's limitation with [CPP] by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or

12

> other evidence that is sufficiently evident to the
> reviewing court.

Jones v. Colvin, No. 7:14CV273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20, 2015) (magistrate judge's recommendation adopted by district judge) (unpublished) (emphasis added). Here, the AAJs' decision provides a sufficient explanation as to why the RFC's restrictions to "simple, routine, repetitive tasks" ("SRRTs"), as well as to "simple, short instructions," "simple job-related decisions," "few workplace changes," and "only occasional contact with co-workers, supervisors, and the public" (Tr. 10-11) adequately accounted for Plaintiff's moderate deficit in CPP.

First, the AAJs recognized Plaintiff's testimony that she "loses track of stuff" and could not work, in part, because of "difficulties with concentration" (Tr. 11; see also Tr. 720, 727, 734-35), but found that her "statements as to the intensity and persistence of th[o]se symptoms [we]re not well supported in the record" (Tr. 11). Consistent with that finding, the AAJs had earlier noted, at step three of the SEP, that "[t]he record reflect[ed] that [Plaintiff]'s mental symptoms [we]re stable with medication compliance," that she "c[ould] function fairly well independently, with some help with caring for her son," that "[s]he [wa]s apparently able to attend her medical and mental health appointments," and that "there [wa]s no evidence that her mental symptoms would markedly affect her ability to maintain a simple work routine." (Tr. 9-10.) Notably, Plaintiff has not challenged

13

the AAJs' analysis of Plaintiff's subjective symptom reporting. (See Docket Entry 14.)

Second, with regard to the objective medical evidence, the AAJs noted that, despite Plaintiff's "complain[t] of mental impairments . . .[, a] brief exam appeared normal in all areas including mental" (Tr. 13-14 (citing Tr. 2158-59)), as well as that, notwithstanding her reports of "problems with memory," Plaintiff "had a normal mood and affect, normal speech, normal behavior, normal thought content and judgment, and normal cognition and memory" (Tr. 14 (citing Tr. 2353, 2356)). Although the AAJs did not expressly discuss most of the mental health evidence of record, they stated that they "performed an independent review of all the evidence in the hearing record before the ALJ" and "careful[ly] consider[ed ] all the evidence" (Tr. 5 (emphasis added)) and, without evidence to the contrary (absent here), the Court should take them at their word, see Reid v. Commissioner of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014) (holding that, if "the ALJ . . . stated that the whole record was considered . . . absent evidence to the contrary, we take [him] at [his] word").

Furthermore, Plaintiff has not shown that remanding for a further discussion of the mental health evidence would lead to a different result in her case, as Plaintiff's cited evidence would not compel the AAJs to include additional limitations in the mental RFC. Some of that evidence consists of Plaintiff's subjective reports of symptoms (see Tr. 950-57, 972, 1028, 1254, 1517) which,

14

as discussed above, the AAJs discounted (see Tr. 11), in a manner unchallenged by Plaintiff (see Docket Entry 14). Other portions of that evidence documented normal findings (or lacked findings) regarding Plaintiff's concentration, attention, or focus. (See Tr. 1058-59 (recording "normal" attention and concentration), 1125, 1129, 1208-10 (noting clinician's rating of Plaintiff's attention as "fine" despite checking box that attention and concentration remained "impaired"), 1237, 1242, 1517, 1559, 1655, 1733, 1750, 1781, 1793, 1860-61 (denoting "good" attention).) The remaining evidence consists of mental health records with boxes checked marking Plaintiff's attention and concentration as "impaired" but also showing that she remained "alert" and "cooperative" with "intact" memory (see Tr. 1054, 1061-62, 1074, 1097-98, 1115-18 (also describing Plaintiff's attention as "adequate"), 1120-22 (additionally rating Plaintiff's attention as "improving"), 1888), as well as a finding by a psychiatrist that Plaintiff presented as "distracted somewhat" (Tr 1856), a notation by consultative medical examiner Dr. Mike Dearinger that Plaintiff appeared "easily distracted" (Tr. 2128), and the opinion of consultative psychological examiner Dr. Ashley King that Plaintiff's attention remained "adequate to repetitive, simple tasks" (Tr. 2143). Moreover, of the findings that support limitations in Plaintiff's ability to concentrate, Plaintiff fails to establish that findings of "impaired" attention and concentration (as well as lone findings of "distracted somewhat" and "easily distracted") conflict with the

15

AAJs' finding that Plaintiff possessed "moderate" limitation in CPP, which the regulations define as "fair" ability to maintain CPP "independently, appropriately, effectively, and on a sustained basis," 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00F.2.c.

Third, the AAJs' discussion of the opinion evidence supports their conclusion that, despite moderate limitation in CPP, Plaintiff remained capable of performing SRRTs with limited social interaction. In that regard, the AAJs gave "great weight" to the state agency psychological consultants (Tr. 16), who found that, notwithstanding moderate limitation in CPP (see Tr. 812, 826), Plaintiff "[r]etain[ed] the ability to follow simple instructions" (Tr. 816, 831 (also including ability to follow "some complex" instructions)). In addition, the AAJs accorded "some weight" to the opinions of Dr. King (Tr. 16), who opined that Plaintiff's attention rated as "adequate to repetitive, simple tasks" (Tr. 2143). The Fourth Circuit has found an ALJ's reliance on such opinion evidence sufficient to account for moderate limitations in CPP under Mascio. See Sizemore v. Berryhill, 878 F.3d 72, 80–81 (4th Cir. 2017) (rejecting the plaintiff's argument under Mascio where ALJ relied on opinions of consultative examiner and state agency psychological consultant that, notwithstanding moderate

deficit in CPP, the plaintiff could sustain attention sufficiently to perform SRRTs).[6]

In light of the foregoing analysis, Plaintiff has failed to demonstrate prejudicial error under <u>Mascio</u> and her first assignment of error falls short.

## 2. Conflicts Between VE and <u>DOT</u>

Next, Plaintiff asserts that "[t]he AAJ's [sic] failure to identify and resolve the apparent conflict between the VE's testimony and the [<u>DOT</u>] is harmful error that prevents their decision from being supported by substantial evidence." (Docket Entry 14 at 12 (bold font and single-spacing omitted).) More specifically, Plaintiff argues (A) that "[a] review of the [<u>DOT</u>] descriptions of the jobs of Assembler and Electrical Assembler reveal that each of these jobs require a . . . Reasoning Development Level of 2 [('RDL 2')]" (<u>id.</u> at 13 (citing <u>DOT</u>, No. 706.684-022 ("Assembler, Small Products I"), 1991 WL 679050 (G.P.O. 4th ed rev. 1991), and <u>DOT</u>, No. 729.687-010 ("Assembler, Electrical Accessories I"), 1991 WL 679733)), and (B) "that the VE's identification of jobs requiring [RDL 2] is in conflict with the

---

[6] Plaintiff nevertheless contends that the AAJs "failed to reconcile . . . with the RFC" (Docket Entry 14 at 12) the state agency psychological consultants' opinion "that [Plaintiff]'s chronic pain and depression would interfere with task persistence <u>at times</u>" (<u>id.</u> at 11 (emphasis added) (citing Tr. 815-816, 830-831)). Again, however, Plaintiff has not shown that opinions that her pain and depression would "interfere with her ability to maintain task persistence" (Tr. 816, 830 (adding disclaimer "at times" to describe frequency of interference)) conflicts with the AAJs' finding that Plaintiff possessed "moderate" limitation in CPP (Tr. 9), which the regulations define as "fair" ability to maintain CPP "independently, appropriately, effectively, and on a sustained basis," 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00F.2.c.

17

limitation[] to 'simple, short instructions'" in the RFC (id. at 13-14 (quoting Tr. 10); see also id. at 14-16 (citing Lawrence v. Saul, 941 F.3d 140, 143-44 (4th Cir. 2019), and Thomas v. Berryhill, 916 F.3d 307, 313-14 (4th Cir. 2019), for proposition that RFC limitation to "short" instructions apparently conflicted with "detailed" instructions needed to perform RDL 2 jobs, and Pearson v. Colvin, 810 F.3d 204, 210-11 (4th Cir. 2015), as holding that an ALJ's failure to identify and resolve apparent conflict between VE and DOT constitutes grounds for remand)).

Plaintiff "further contends that there is an apparent conflict between the ALJ's [sic] limitation that [Plaintiff] 'must avoid concentrated exposure to dangerous moving machinery'" (id. at 14 (quoting Tr. 10)), and "the VE's identification of the job of Bakery Line Worker" (id. (referencing DOT, No. 524.687-022 ("Bakery Worker, Conveyer Line"), 1991 WL 674401)). In that regard, Plaintiff points out that "the [Selected Characteristics of Occupations Defined in the Revised [DOT] ('SCO')] indicates that the job of Bakery Line Worker requires occasional exposure to Proximity to Moving Mechanical Parts" (id. at 16 (citing SCO, Pt. A, § 06.04.28 ("Manual Work, Food Processing"), No. 524.687-022 ("Bakery Worker, Conveyer Line") (U.S. Dep't of Labor 1993), and id., App'x D ("Environmental Conditions"), § 8 ("Proximity to Moving Mechanical Parts")), and "contends that the occasional exposure indicated in the [SCO] could be concentrated exposure"

18

(id.).  As a result, Plaintiff "argues that reversal and remand to fully develop the record and resolve the apparent conflict between the VE's testimony and the [DOT] in her claim is warranted under [Social Security Ruling 00-4p, Policy Interpretation Ruling: Titles II and XVI: Use of [VE] and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions, 2000 WL 1898704 (Dec. 4, 2000) ('SSR 00-4p')]," Lawrence, Thomas, and Pearson.  (Docket Entry 14 at 17.)

SSR 00-4p places an affirmative duty on an ALJ to elicit an explanation from the VE as to any "apparent unresolved conflict" between the VE's testimony and the DOT:

> Occupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the [DOT].  When there is an apparent unresolved conflict between VE . . . evidence and the [DOT], the [ALJ] must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled.  At the hearings level, as part of the [ALJ's] duty to fully develop the record, the [ALJ] will inquire, on the record, as to whether or not there is such consistency.

SSR 00-4p, 2000 WL 1898704, at *2 (emphasis added).  "[A]n ALJ has not fulfilled his affirmative duty merely because the [VE] responds 'yes' when asked if her testimony is consistent with the [DOT]," Pearson, 810 F.3d at 208 (internal quotation marks omitted); thus, "[t]he ALJ independently must identify . . . where the [VE's] testimony seems to, but does not necessarily, conflict with the [DOT]," id. at 209 (emphasis added); see also id. (rejecting the

19

Commissioner's argument that an "apparent" conflict meant only an "obvious" one).

As relevant to the instant case, the ALJ queried the VE (upon whose testimony the AAJs relied (see Tr. 19)) whether an individual limited to, inter alia, SRRTs involving simple, short instructions could perform any jobs existing in significant numbers in the national economy. (See Tr. 758-59.) In response, the VE (A) opined that such an individual could not perform Plaintiff's past relevant work as a clerk, but would remain capable of performing the jobs of assembler, bakery line worker, and electrical assembler, (B) provided the corresponding DOT codes for the three jobs, and (C) recited their incidence in the national economy. (See Tr. 759.) The VE subsequently confirmed that he knew of no conflicts between his testimony and the DOT. (See id.)

The AAJs adopted the VE's testimony as to Plaintiff's ability to perform the three jobs in question:

> To determine the extent to which [the RFC's non-exertional limitations] erode the unskilled light occupational base, the [AAJs] reviewed [VE] testimony . . . as to whether jobs exist in the national economy for an individual with [Plaintiff's] age, education, work experience, and [RFC]. The [VE] testified that given all of these factors the individual would be able to perform the requirements of representative occupations including: Assembler, DOT, No. 706.684-022, 3,000,000 jobs available in the national economy; Bakery Line Worker, DOT, No. 524.687-022, 20,000 jobs available in the national economy; and Electrical Assembler, DOT, No. 729.687-010, 25,000 jobs available in the national economy.
>
> Pursuant to SSR 00-4p, [the AAJs] ha[ve] determined that the [VE's] testimony is generally consistent with the information contained in the [DOT]. The [VE]'s

20

references to the [DOT] confirm that she [sic] contemplated the information in that vocational manual. The [VE] is familiar with terms used by the [SSA], such as unskilled, semiskilled, and skilled work, as well as exertional terms, such as sedentary, light, medium, heavy, and very heavy.  Furthermore, the [AAJs] ha[ve] compared the [VE]'s testimony with the information in the [DOT] to identify any actual or apparent conflicts.  In this instance, the [VE]'s testimony is generally consistent with the information in those sources.

(Tr. 19 (emphasis added) (job data adapted from table format).)

Plaintiff's argument that the RFC's limitation to simple, short instructions apparently conflicts with the two assembly jobs cited by the VE (and adopted by the AAJs), because those jobs require RDL 2, which entails the ability to follow detailed instructions, has merit.  (See Docket Entry 14 at 12-14.)  In Thomas, the Fourth Circuit relied on its earlier holding in Pearson and held that an apparent conflict existed between the VE's testimony that a claimant limited to short, simple instructions could perform three particular jobs categorized by the DOT as requiring RDL 2:

> We believe that [the claimant], being limited to short, simple instructions, may not be able to carry out detailed but uninvolved instructions.  This is not a categorical rule - some instructions, particularly if they are well-drafted, may be simultaneously short, simple, detailed, and uninvolved.  Even so, the conflict between [the claimant]'s limitation to short, simple instructions and the VE's testimony that [the claimant] could perform jobs that include detailed but uninvolved instructions is as apparent as the conflict we identified in Pearson.  Since we held that an apparent conflict existed in Pearson, we are satisfied that one exists in this case, too.  We remand so that the ALJ can resolve the conflict in accordance with the [SSA]'s regulations.

21

Thomas, 916 F.3d at 314 (emphasis added) (footnote omitted);
compare Lawrence, 941 F.3d at 143 (distinguishing Thomas and noting
"key difference" that the claimant in Thomas "was limited to
'short' instructions[, which are] inconsistent with 'detailed'
because detail and length are highly correlated" and finding "no
comparable inconsistency" between detailed instructions and the
ALJ's "f[inding] that [the claimant in Lawrence] could perform jobs
limited to 'simple, routine repetitive tasks of unskilled work'").

        The AAJs' failure to identify and resolve the apparent
conflict between the VE and the DOT involving the two assembly jobs
at issue constitutes harmless error under the circumstances of this
case, see generally Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir.
1989) (observing that "[n]o principle of administrative law or
common sense requires us to remand a case in quest of a perfect
opinion unless there is reason to believe that the remand might
lead to a different result"), because Plaintiff has not shown that
any unresolved, apparent conflicts existed between the VE and DOT
regarding the Bakery Line Worker job.  Contrary to Plaintiff's
contentions (see Docket Entry 14 at 14), no apparent conflict
existed between the VE's testimony that an individual precluded
from "concentrated exposure to . . . moving machinery" could
perform the job of Bakery Line Worker (Tr. 758-59 (emphasis
added)), and the DOT's listing for the "Bakery Worker, Conveyer
Line" job reflecting exposure to "[m]oving [m]ech[anical [p]arts[
o]ccasionally," i.e., the condition "[e]xists up to 1/3 of the

                                   22

time," DOT, No. 524.687-022 ("Bakery Worker, Conveyer Line"), 1991 WL 674401 (emphasis added). Plaintiff's argument conflates a term used to describe the <u>frequency</u> of exposure to a condition (occasional) with a term rating the <u>intensity</u> of the exposure (concentrated).

As well-explained by another district court finding no apparent conflict between even a preclusion of <u>moderate</u> exposure to environmental irritants and the <u>DOT</u>'s listing of occasional exposure:

> [I]t is unclear that any conflict exists in the present case, let alone an apparent one. Essentially, [the c]laimant argues that a conflict occurred between the ALJ's hypothetical question, which limited the individual to [avoid even] "moderate" [exposure to] environmental irritants, and the VE's testimony that the individual could perform work as a room cleaner, groundskeeper, and industrial cleaner because the positions only involved "occasional" exposure to environmental irritants. [The c]laimant argues that it should have been apparent to the ALJ that the VE misunderstood the difference between the qualitative term "moderate" and the quantitative term "occasional[,]"[] and he should have sought explanation for the apparent conflict. This argument is unpersuasive. We find, and [the c]laimant points to, no authority in the [DOT] or otherwise that supports [the c]laimant's contentions. In fact, [the c]laimant simply highlights a difference in terminology between the scale used to measure a claimant's environmental limitations (unlimited, avoid concentrated exposure, avoid even moderate exposure, avoid all exposure) and his or her exertional limitations (constantly, frequently, occasionally, and none).

Glover v. Berryhill, No. 16C5607, 2017 WL 2506411, at *8 (N.D. Ill. June 9, 2017) (unpublished) (emphasis added).

Similarly, another district court elaborated further on the conflation of the two rating scales in finding that the ALJ's

23

preclusion of concentrated exposure to atmospheric conditions did not conflict with even the <u>DOT</u>'s classification of a job as requiring <u>frequent</u> exposure:

> Plaintiff relies on the [SCO] table, which classifies the "absence or presence of . . . environment condition components," into one of four categories: Not Present; Occasionally (Activity or condition exists up to 1/3 of the time); Frequently (Activity or condition exists from 1/3 to 2/3 of the time); Constantly (activity or condition exists 2/3 or more of the time. This classification system refers to the frequency, or proportion of time that a particular environmental condition is or may be present, rather than to the quantity or magnitude of the environmental condition. Accordingly, the classification of the hand packager job as one subject to "frequent" atmospheric conditions does not conflict with the ALJ's asking the VE about jobs with a restriction of avoiding "concentrated exposure" to certain respiratory irritants. Absent evidence of any actual conflict, the ALJ's failure to ask whether the VE's testimony conflicted specifically with the [SCO] is not legal error.

<u>Sanchez v. Colvin</u>, No. 13CV929, 2014 WL 4065091, at *17 (E.D.N.Y. Aug. 14, 2014) (unpublished) (internal footnote and parenthetical citation omitted); <u>see also</u> <u>Johnson v. Commissioner, SSA</u>, 764 F. App'x 754, 761 (10th Cir. 2019) (finding no conflict between VE's testimony and <u>DOT</u> where "jobs of janitor and machine packager do not involve concentrated exposure to pulmonary irritants or humidity" because the <u>DOT</u> "says that humid conditions are either not present or only present occasionally, and neither job involves concentrated exposure to such things as fumes, odors, dust and gases"); <u>Patton v. Colvin</u>, No. EDCV 12-02091, 2013 WL 6018059, at *6 (C.D. Cal. Nov. 12, 2013) (unpublished) ("The ALJ precluded plaintiff from 'concentrated' exposure to pulmonary irritants,

24

. . . [and, b]ecause the [DOT] states that electronics assembler workers are exposed to such chemicals occasionally, rather than frequently or constantly, there is no apparent conflict between the [VE]'s testimony and the [DOT].”); but see Steven N. v. Berryhill, No. 1:17CV427, 2018 WL 6629681, at *14 (W.D.N.Y. Dec. 19, 2018) (“According to the [SCO], the food preparation position would expose [the p]laintiff to extreme heat for up to one-third of the work day, which appears to exceed an RFC that precludes ‘concentrated’ exposure to extreme heat[, and i]f there is a difference between the two terms, the ALJ is required to explain it.”); Dodds v. Astrue, No. CIV-09-445, 2011 WL 1135104, at *3 (E.D. Okla. Mar. 25, 2011) (unpublished) (“A conflict exists [between the ALJ's preclusion of concentrated exposure to pulmonary irritants and] . . . the [DOT's] defin[ition of] the job of assember [sic] as requiring ‘occasional’ exposure . . . to atmospheric conditions.”).

In short, to credit Plaintiff's “conten[tion] that the occasional exposure indicated in the [SCO] could be concentrated exposure” (Docket Entry 14 at 16 (emphasis added)) would impermissibly extend the holding in Pearson to merely “possible” conflicts. See Eddie v. Berryhill, No. 5:16CV801, 2017 WL 4002147, at *6 (E.D.N.C. Aug. 24, 2017) (unpublished) (rejecting the plaintiff's conflict argument because “[the c]laimant move[d] beyond what is apparent and into the realm of what is possible” and noting that “[t]he Fourth Circuit in Pearson expressly declined to

25

expand the ALJ's duty to include inquiry as to 'all possible conflicts'" (emphasis added) (quoting <u>Pearson</u>, 810 F.3d at 209)), <u>recommendation adopted</u>, 2017 WL 3995813 (E.D.N.C. Sept. 11, 2017) (unpublished). As a result, the Court should deny relief on Plaintiff's second issue on review.

### 3. 2013 ALJ Decision

Lastly, Plaintiff maintains that "[t]he AAJs [sic] failure to address and reconcile [the 2013 ALJ decision]'s RFC findings, which they assigned significant weight, with their own conflicting RFC conclusions is error that prevent [sic] substantial evidence from supporting the [AAJs'] decision." (Docket Entry 14 at 18 (bold font and single-spacing omitted).) In particular, Plaintiff observes that "the AAJs included less restrictive RFC findings with respect to [Plaintiff]'s exposure to environmental limitations" in that the 2013 ALJ decision "concluded that [Plaintiff] would be restricted to 'no exposure to hazards such as unprotected heights and moving machinery'" (<u>id.</u> (quoting Tr. 790)), but the AAJs "concluded that [Plaintiff] 'must avoid concentrated exposure to dangerous moving machinery and unprotected heights'" (<u>id.</u> (quoting Tr. 10)). According to Plaintiff, "since there is no discussion in the record to explain how the AAJs reached their conclusion regarding [Plaintiff]'s ability to tolerate exposure to . . . moving machinery, . . . meaningful review is precluded." (<u>Id.</u> at 20.) Plaintiff deems the AAJs' error in this regard as "harmful

26

since the inclusion of an RFC limitation to 'no exposure to hazards such as unprotected heights and moving machinery' consistent with [the 2013 ALJ decision] would preclude the job of Conveyer Line Bakery Worker." (Id. (quoting Tr. 790).)

The Fourth Circuit addressed the manner in which an ALJ should consider a final decision of the Commissioner regarding a claimant's prior application for benefits in Albright, 174 F.3d at 474-78. In that case, the new ALJ did not analyze whether the claimant's condition had worsened since the prior ALJ's decision, but rather simply adopted the prior ALJ's denial of benefits as res judicata based upon Acquiescence Ruling 94-2(4) ("AR 94-2(4)"). See id. at 474-75. AR 94-2(4) required ALJs to adopt findings from prior ALJ decisions unless the claimant produced new and material evidence. See id. The Fourth Circuit found the application of AR 94-2(4) to the new claim for benefits "imprudent," id. at 477, and contrary to the SSA's long-standing "treatment of later-filed applications as separate claims," id. at 476.

In response to Albright, the SSA issued Acquiescence Ruling 00-1(4), (Interpreting Lively v. Secretary of Health and Human Services) – Effect of Prior Disability Findings on Adjudication of a Subsequent Disability Claim – Titles II and XVI of the Social Security Act, 2000 WL 43774 (Jan. 12, 2000) ("AR 00-1(4)"), which provides as follows:

> When adjudicating a subsequent disability claim . . ., an [ALJ] determining whether a claimant is disabled during a previously unadjudicated period must consider . . . a

27

<u>prior finding [of a claimant's RFC or other finding
required at a step in the SEP] as evidence and give it
appropriate weight in light of all relevant facts and
circumstances</u>. In determining the weight to be given
such a prior finding, an [ALJ] will consider such factors
as: (1) whether the fact on which the prior finding was
based is subject to change with the passage of time, such
as a fact relating to the severity of a claimant's
medical condition; (2) the likelihood of such a change,
considering the length of time that has elapsed between
the period previously adjudicated and the period being
adjudicated in the subsequent claim; and (3) the extent
that evidence not considered in the final decision on the
prior claim provides a basis for making a different
finding with respect to the period being adjudicated in
the subsequent claim.

Where the prior finding was about a fact that is subject
to change with the passage of time, such as a claimant's
[RFC], . . . the likelihood that such fact has changed
generally increases as the interval of time between the
previously adjudicated period and the period being
adjudicated increases. An [ALJ] should give greater
weight to such a prior finding when the previously
adjudicated period is close in time to the period being
adjudicated in the subsequent claim, e.g., a few weeks as
in *Lively*. However, an [ALJ] generally should give less
weight to such a prior finding as the proximity of the
period previously adjudicated to the period being
adjudicated in the subsequent claim becomes more remote,
e.g., where the relevant time period exceeds three years
as in *Albright*. In determining the weight to be given
such a prior finding, an [ALJ] must consider all relevant
facts and circumstances on a case-by-case basis.

AR 00-1(4), 2000 WL 43774, at *4 (emphasis added). "An ALJ does

not necessarily have to walk through each factor in order to comply

with AR 00-1(4)." <u>Grant v. Colvin</u>, No. 4:12CV191, 2014 WL 852080,

at *7 (E.D. Va. Mar. 4, 2014) (unpublished).

Here, the AAJs explained the weight they accorded to the 2013

ALJ decision as follows:

> The [AAJs] give[] significant weight to the [2013 ALJ] decision . . . . The evidence of record at that time was very consistent with the [2013 ALJ decision], and in fact, the evidence since that date supports an ongoing [RFC] for unskilled light work activity.

(Tr. 14 (emphasis added) (internal citation omitted).)

Although the AAJs did not expressly explain why, despite according the 2013 ALJ decision's findings "significant weight" (Tr. 14), they precluded Plaintiff from only "concentrated" exposure to moving machinery (Tr. 10), a finding less favorable to Plaintiff than the 2013 ALJ decision's restriction to "no" such exposure (Tr. 790), the Court can still meaningfully review the path of the AAJ's reasoning. The AAJs' statement that the evidence since the 2013 ALJ decision "supports on ongoing RFC for unskilled light work activity" (Tr. 14 (emphasis added)) indicates that the AAJs focused the assigned weight on the 2013 ALJ decision's RFC limitations to the light exertional level and to unskilled work, rather than to other limitations in the RFC. Moreover, in this case, the state agency medical consultants did not include any restrictions on exposure to moving machinery in the RFC (see Tr. 814 (no environmental limitations), 829 (same)), and the AAJs accorded "great weight" to the consultants' opinions (Tr. 16).[7] Moreover, although the AAJs expressly discussed only Dr.

_____

[7] Although the 2013 ALJ decision reflects that the ALJ assigned "great weight" to the state agency medical consultants' opinions, the ALJ did not describe the substance of those opinions (Tr. 794), and the record does not contain the consultants' RFC determinations. The 2013 ALJ decision also lacks any specific explanation for the total preclusion of exposure to moving machinery. (See Tr. 790-94.)

Dearinger's opinions regarding Plaintiff's abilities to sit, stand, and walk (see id. (citing Tr. 2135)), Dr. Dearinger also opined that Plaintiff could "[n]ever" have exposure to moving mechanical parts due to "anxiety, tremors, [and] pain" (Tr. 2138), and the AAJs discounted Dr. Dearinger's opinions as "not supported by the objective record and [] based primarily on [Plaintiff]'s subjective complaints," as well as because "Dr. Dearinger did not have access to [Plaintiff]'s medical records" (Tr. 16).

Under these circumstances, Plaintiff's third assignment of error lacks merit.

### III.  CONCLUSION

Plaintiff has not established an error warranting relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Summary Judgment (Docket Entry 13) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 15) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

March 5, 2021